

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** E-15-361

| | |
|---|---|
| | **Opinion Delivered** March 16, 2016 |
| LET'S TALK SPEECH PATHOLOGY SERVICES, LLC<br><br>APPELLANT | APPEAL FROM THE ARKANSAS BOARD OF REVIEW<br>[NO. 2014-BR-8 EC] |
| V. | |
| DIRECTOR, DEPARTMENT OF WORKFORCE SERVICES, EMPLOYER CONTRIBUTIONS UNIT<br><br>APPELLEE | AFFIRMED |

## BRANDON J. HARRISON, Judge

Let's Talk Speech Pathology Services, LLC ("Let's Talk"), appeals from the Arkansas Board of Review's ("Board") decision finding that it is required to pay unemployment-insurance taxes for the services performed by its speech pathologists. On appeal, Let's Talk argues that the Board erred in applying an out-of-date version of Ark. Code Ann. § 11-10-210(e) and that the Board's decision is not supported by substantial evidence. We affirm.

On 12 June 2014, the Arkansas Department of Workforce Services ("Department") issued an unemployment-tax determination letter of liability to Let's Talk, concluding that Katy Eldridge, a speech pathologist under contract with Let's Talk, and all other workers working under the same or similar conditions, were employees for purposes of

unemployment-insurance taxes.[1]  Let's Talk filed a request for determination of coverage by the Department director ("Director"), and a hearing was held on 15 October 2014.

Christy Wygal, a speech pathologist and co-owner of Let's Talk, testified that Let's Talk provides administrative services that include making arrangements with physicians to get approved speech therapy, contracting with speech therapists to provide that therapy, and billing Medicaid for those services.  She explained that once a child in need of services is identified, the parents fill out the required paperwork, Let's Talk determines whether the child qualifies for speech therapy based on the Medicaid guidelines, and if the child qualifies, then the necessary paperwork is sent to a doctor to prescribe the amount of therapy per week.  Once the amount of therapy is set, Let's Talk matches the child with a speech therapist in that area.  Wygal explained that Let's Talk has contracts with thirty-five speech therapists.

Wygal testified that Let's Talk does not assist its speech pathologists in obtaining their required licensure, continuing education, or liability insurance.  She also explained that each therapist sets his or her own hours and can choose not to work with a particular child.  The speech therapist contacts the parents, the daycare, or the school and arranges for the therapy, usually at the child's daycare.  Wygal testified that Let's Talk has an office in Little Rock but that the speech therapists are not required to come to that office.  She said that the speech therapists determine their own therapy methods and provide their own materials and that Let's Talk does not supervise the therapy sessions.  She also

---

[1] Eldridge was disqualified from receiving unemployment benefits, and she is not a party to this appeal.

testified that Let's Talk does not reimburse its therapists for mileage or materials. The therapists write progress notes on a daily basis and submit those notes to Let's Talk on a monthly basis; billing reports are turned in weekly.

Wygal explained that Let's Talk has "Independent Contractor Agreements" with the therapists who provide services on behalf of Let's Talk. Those agreements make clear that the therapists are to remit their own taxes, provide their own materials, and pay for their own insurance and licensure fees. The therapists are not prohibited from providing services on behalf of other companies. The therapists submit billing reports to Let's Talk, which in turn bills Medicaid for the number of units each child was seen in that week.[2] Medicaid pays $87.04 per four units, and each speech therapist is paid a flat rate of $50 per hour per the "Independent Contractor Agreement." The additional $37.04 is retained by Let's Talk as payment for its administrative services.

Wygal stated that Let's Talk keeps up-to-date with the Medicaid guidelines and provides an administrative service by collecting Medicaid funds to pay the speech pathologists for their work. She also agreed that it is the custom for private companies such as Let's Talk to treat their therapists as independent contractors. On cross-examination, Wygal agreed that the company interviewed its therapists when hiring them and did not put out a request for qualifications or request for proposals. She also agreed that the therapists are required to wear name tags that identify them with Let's Talk. She explained that Let's Talk or the therapist can terminate a contract with thirty days' notice and that the contract contains a "standard" noncompete clause. She also agreed that Let's

---

[2] Four units is equal to one hour of therapy.

SLIP OPINION

Talk was currently carrying workers' compensation insurance on its therapists because it was "misinformed by our insurance agent that that was required." Wygal stated that Let's Talk planned to cancel that insurance. Finally, Wygal was questioned about the company's mission statement on its website:

> Let's Talk Speech Pathology Services is a community based private practice serving the Little Rock and Central Arkansas area. . . . Our mission is to provide high quality, individualized speech therapy in the clients' most natural setting including homes, daycares, schools, and our Little Rock office. . . . Our staff includes speech pathologists, occupational therapists, as well as a physical therapist.

Wygal disagreed that the statement represents that the therapists work for Let's Talk; instead, she said the company considered "staff" a generic term that was generated by their website creator. She also stated that if a parent was unhappy with a particular therapist, the parent would contact Let's Talk and "we would talk to the parent and find out what the problem is, exactly, and make changes based on that."

Laura Johnston testified that she had been a licensed speech pathologist for sixteen years and had worked with Let's Talk for fourteen months. She said that she also works as an independent contractor with three other companies and that such an arrangement is customary in the industry. She explained that she receives no benefits from Let's Talk and that Let's Talk does not provide any training or materials. She stated that she arranges the day and time that she will work with a particular child and receives no direction from Let's Talk on what services or methods that she should use. She agreed that Let's Talk handled all the administrative functions related to her getting paid by Medicaid for her professional services.

SLIP OPINION

Kathy Frelin testified that she is a licensed speech pathologist and owns her own company that provides speech pathology services. She explained that she contracts with Let's Talk to provide services and that her company is paid for those services by Let's Talk. Similar to Johnston, Frelin testified that Let's Talk does not provide materials or supervision and that she makes her own arrangements with clients. She also stated that she has had independent-contractor relationships with other speech-pathology companies. She explained that she did not know about Medicaid billing and that it was worth it to give Let's Talk "some off the top of what I'm making to deal with all the Medicaid billing."

Kenneth Jennings testified that he is a 515 Unit Supervisor with the Department's Wage Investigation Unit. Jennings testified that Let's Talk failed the first element of Ark. Code Ann. § 11-10-210(e), the "free from control and direction" element, because the hourly rate was set by the company, the worker was required to provide time worked to the employer, and the employer had discharge rights over the worker. On the second element under the statute, the "services performed outside the usual course of business" element, Jennings explained that Let's Talk is a speech-therapy business and the worker performs speech therapy, which is the same type of business. He also stated that the work is performed at either the Let's Talk office or the child's daycare or home, and he agreed that these are "the same places that Let's Talk holds out as doing their services." And on the third element, the "individual engaged in an independent business or trade" element, Jennings said that the worker had no financial interest other than hourly pay and had no

personal speech–therapy business; in addition, Let's Talk provided a name badge for the worker, so he or she appeared to represent Let's Talk.

The Director issued a decision on 29 October 2014. The decision first laid out the applicable law, Ark. Code Ann. § 11-10-210(e) (Supp. 2013):

> (e) Service performed by an individual for wages shall be deemed to be employment subject to this chapter irrespective of whether the common law relationship of master and servant exists, unless and until it is shown to the satisfaction of the director that:
>
> (1) Such individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact;
>
> (2) The service is performed either outside the usual course of the business for which the service is performed or is performed outside all the places of business of the enterprise for which the service is performed; and
>
> (3) The individual is customarily engaged in an independently established trade, occupation, profession, or business of the same nature as that involved in the service performed.

The Director found that Let's Talk failed to meet prongs (1) and (2) of the three-part conjunctive test found in the statute. Thus, the Director agreed with the Department's determination that Let's Talk was responsible for the payment of unemployment–insurance taxes for the services performed by its speech therapists.

Let's Talk appealed to the Board, which issued a decision in May 2015 affirming the Director's decision, with the modification that Let's Talk failed to meet its burden on all three prongs under the statute. On the first prong, the Board found that Let's Talk provided the workers with clients, the Let's Talk website seeks clients who need its services, and "[i]f [Let's Talk] had been a billing/administrative service company it would not have clients except for the speech pathologist for whom it provided a billing service." The Board also noted that other factors, such as the contractual requirement that the

worker provide Let's Talk with written progress notes and updates and turn in weekly billing logs, the noncompete clause, and the right of discharge, evidenced a "type of oversight" that indicated "direction and control of the worker's job activities."

On the second prong, the Board found that while Let's Talk contends it serves as merely a referral service, it holds itself out to the public as providing speech-pathology services. Further, Let's Talk does not make money from the referral, but instead makes a profit from the therapists who perform services. The Board concluded that "[w]orkers providing speech pathology treatment is not outside the usual course of [Let's Talk's] business." With regard to the place-of-business aspect of the test, the Board found that "the therapists in the instant case represent the therapists' interest at the locations in which services are provided to clients; particularly since the employer describes the therapists as 'staff' and advertised that it would allow services to be performed in its own office on its website." And on the third prong, the Board found that "while workers may have provided similar services to other companies, [Let's Talk] failed to present specific evidence to establish an independently established business performing the same type of services." Let's Talk has timely appealed the Board's decision to this court.

We first address Let's Talk's challenge to the sufficiency of the evidence. Let's Talk argues that the Board erred in finding that it failed to meet its burden on the three-prong test in section 11–10–210(e). To establish the exemption set forth in section 11–10–210(e), an employer must prove each of the three requirements in subsections (1)–(3). *Barb's 3-D Demo Serv. v. Dir.*, 69 Ark. App. 350, 13 S.W.3d 206 (2000). If there is sufficient

evidence to support the Board's finding that any one of the three requirements has not been met, the case must be affirmed. *Id.*

We review the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Rodriguez v. Dir.*, 2013 Ark. App. 361. Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* Even when there is evidence upon which the Board might have reached a different decision, the scope of our review is limited to a determination of whether the Board reasonably could have reached the decision that it did based upon the evidence before it. *Id.* The Board determines issues of the credibility of witnesses and the weight to be afforded their testimony. *Ballard v. Dir.*, 2012 Ark. App. 371.

Let's Talk first addresses subsection (e)(1), which requires it to show that "[s]uch individual has been and will continue to be free from control and direction in connection with the performance of the service, both under his or her contract for the performance of service and in fact." Ark. Code Ann. § 11–10–210(e)(1). Let's Talk contends that it did not exercise control over Eldridge's speech–pathology services. It argues that the therapist had to submit billing logs to Let's Talk so it could perform the administrative services it agreed to perform, and its requirement that those logs and progress notes (that Medicaid requires) be filed by a certain time is not indicative of the control necessary under subsection (e)(1). Let's Talk again emphasizes, as it did below, that the speech therapists made their own arrangements with clients and decided their own therapy methods. Let's Talk cites *O'Dell v Director*, 2014 Ark. App. 504, 442 S.W.3d 897, in which this court

reversed the Board's finding that typists hired by a professional transcriptionist were

employees for unemployment-tax purposes.  There, we explained:

> The record showed that O'Dell provided medical-transcription services to physicians for St. Vincent Hospital. The physicians provided tapes to O'Dell, who would transcribe them. She also assigned tapes to other typists when she had more work than she could complete alone. The typists picked up the tapes from O'Dell's residence, transcribed them, and returned their transcriptions on a thumb drive or floppy disk. O'Dell then reviewed the transcripts, made necessary changes, printed them, and returned them to the physicians.

> The Board found that O'Dell failed to prove the first prong: namely, that Polston and other typists were not free from her control. We disagree with the Board's broad interpretation of the statute. The sole evidence of control before the Board was that O'Dell gave instructions to her typists regarding the format, font, and margins, and she required them to return the completed work within 24–36 hours. Once the work was returned, O'Dell would review it and make any revisions before forwarding the product to St. Vincent. If any of the typists failed to adequately complete the work, O'Dell retained termination rights and did not pay them. The Board's broad interpretation results in it becoming next to impossible for anyone to be free from control. The legislature surely intended for independent contractors to exist in Arkansas or the statutory test would not exist. Providing an independent contractor with basic guidelines and retaining the right to discontinue using them in the future does not equate to control sufficient to create an employer–employee relationship under the statute.

> Even had we agreed with the Board's statutory interpretation, this was also not substantial evidence of control under Ark. Code Ann. § 11-10-210(e)(1). While we give great deference to the Board's findings of facts, the facts must equate to substantial evidence that reasonable minds might accept as adequate to support a conclusion. We simply do not agree there was evidence substantial enough for the Board to find that O'Dell had failed to meet the burden of proving that the typists she hired were free from her control and direction.

*Id.* at 3–4, 442 S.W.3d at 899–900.  Let's Talk argues that this case is like *O'Dell* because

its ability to terminate the employment contract and its requirement for its therapists to

return necessary documentation to allow for payment does not equate to control sufficient to create an employer–employee relationship.

In response, the Board cites the following facts as substantial evidence of Let's Talk's control over its therapists: (1) Let's Talk determines who needs speech-pathology services, arranges for a doctor to write a prescription for those services, assigns a therapist, and pays that therapist based on the number of hours services are provided; (2) therapists are required to provide Let's Talk with written progress notes and weekly billing logs; (3) therapists are prevented from privately contracting with any of Let's Talk's clients by the noncompete clause; (4) Let's Talk sets the the hourly rate paid to the therapists; (5) Let's Talk receives and handles complaints about the therapists; (6) the therapists are required to wear name badges identifying their affiliation with Let's Talk; and (7) Let's Talk has the right of discharge over the therapists. The Board argues that these facts show that Let's Talk exercises "significant control" over the therapists.

We hold that substantial evidence supports the Board's finding that Let's Talk failed to meet its burden on this point. While the evidence can certainly be viewed as supporting Let's Talk's position, our standard of review requires us to view the Board's findings in the light most favorable to the prevailing party and affirm the Board's decision if it is supported by substantial evidence. *Rodriguez*, *supra*. Even when there is evidence upon which the Board might have reached a different decision, the scope of our review is limited to determining whether the Board reasonably could have reached the decision that it did based upon the evidence before it. *Id.* In this case, the Board could have reasonably decided that Let's Talk did not meet its burden on the first prong, and we therefore affirm

the Board's finding on this point. Our affirmance of the Board's finding on subsection (e)(1) renders it unnecessary to discuss subsections (e)(2) and (e)(3). *See Barb's 3-D Demo Serv.*, *supra.*

Let's Talk also contends on appeal that the Board should have applied an amended version of section 11–10–210(e) that was effective as of 2 April 2015, which was after its appeal to the Board was filed but before the Board issued its decision. The Board noted this change in the law in its decision but stated that because the change to the legislation did not include a clause making the change retroactive, the applicable law was the statute as it existed prior to the legislative change. We hold that we need not reach this issue because Let's Talk has failed to meet its burden under subsection (e)(1), which is a requirement under either version of the statute.

Affirmed.

GLADWIN, C.J., and WHITEAKER, J., agree.

*Chisenhall, Nestrud & Julian, P.A.*, b: *Mark W. Hodge*, for appellant.

*Phyllis Edwards*, for appellee.